UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIMOV ASSOCIATES LLC d/b/a DIMOV TAX AND CPA SERVICES and DIMOV WASSERMAN<br><br>Plaintiffs,<br><br>-against-<br><br>MARC WASSERMAN, DAVID KANE and SELECTIVE FINANCIAL SOLUTIONS<br><br>Defendants. | Civil Action No.: |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

ROMANO LAW
One Battery Park Plaza,
7th Floor
New York, NY 10004
(212) 865-9848

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………………….. 4

STATEMENT OF FACTS ……………………………………………………………….. 5

ARGUMENT ……………………………………………………………………………….. 8

    I.    APPLICABLE LEGAL STANDARD ………………………………………… 8

    II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ……………….. 9

        A.  MISAPPROPRIATION OF TRADE SECRETS………………………………… 10

        B.  BREACH OF FIDUCIARY DUTY…………………………………………… 12

        C.  TORTIOUS INTERFERENCE ……………………………………………... 12

        D.  UNJUST ENRICHMENT ……………………………….…………………... 13

    III.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ………………………………………………………………….. 14

    IV.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT INJUNCTIVE RELIEF ………………………………………………………... 15

CONCLUSION ……………………………………………………………………………… 15

## **TABLE OF AUTHORITIES**

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*
   F.3d 1421, 1427 n.8 (3d Cir. 1994) .......................................................... 9

*Dormeis v. Super Tax LLC*
   2018 U.S. Dist. LEXIS 61450 ................................................................ 11

*Juan E.M. v. Decker*
   458 F. Supp. 3d 244, 258 (D.N.J. 2020) .................................................. 9
   .
*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*
   710 F.3d 99, 105 (3d Cir. 2013) ............................................................... 9

*Nat'l Reprographics, Inc. v. Strom*,
   621 F. Supp. 2d 204, 222 (D.N.J. 2009) ............................................. 9, 14

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*
   69 Fed. Appx. 550, 554 (3d Cir. 2003) ..................................................... 9

*Oburn v. Shapp*
   521 F.2d 142, 148 (3d Cir. 1975) .............................................................. 9

*Oakwood Labs, LLC v. Thanoo*
   999 F.3d 892, 905 n.11, 907-8, 909, 913 (3d Cir. 2021) ........................... 10, 11, 12, 14

*Par Pharm., Inc. v. QuVa Pharma, Inc.*
   2018 U.S. Dist. LEXIS 43612, 2018 WL 1374023 ................................... 15

*Peoplestrategy, Inc. v. Lively Employer Servs., Inc.*
   No. 3:20-cv-02640, 2020 WL 7869214, at *4 (D.N.J. Aug. 28, 2020) ..... 10, 12

*Peoplestrategy, Inc. v. Lively Emplr. Servs.*
   2020 U.S. Dist. LEXIS 171475, 2020 WL 7869214 ................................ 13

*Read v. Profeta*
   397 F. Supp. 3d 597, 633 (D.N.J. 2019) .................................................. 12

*Reilly v. City of Harrisburg*
    858 F.3d 173, 179 (3d Cir. 2017) .............................................................. 9

*Robinson v. Maintech Inc.*
    2024 U.S. Dist. LEXIS 229536, 2024 WL 5165325 ................................ 12

*Rodgers Group, LLC v. Lewis*
    No. 22-482, 2022 WL 4095785 (D.N.J. Sept. 7, 2022) .......................... 14

*Singer Mgmt. Consultants, Inc. v. Milgram*
    650 F.3d 223, 229 (3d Cir. 2011) .............................................................. 9

*Waldman Seafood, Inc. v. Mical Seafood, Inc.*
    2014 U.S. Dist. LEXIS 86143, 2014 WL 2887855 ................................. 13

**<u>Statutes</u>**

Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ...................................... 10

New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 et seq. .............................. 10

**<u>Rules</u>**

Federal Rules of Civil Procedure Rule 65 ........................................................ 4

Local Civil Rules of the United States District Court for the
District of New Jersey Rule 65.1 ..................................................................... 4

Plaintiffs Dimov Wasserman LLC ("Dimov Wasserman") and Dimov Tax and CPA Services ("Dimov Tax") (Dimov Wasserman and Dimov Tax together, "Plaintiffs") submit this Memorandum of Law in support of their Order to Show Cause seeking injunctive relief and a temporary restraining order, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP") and L. Civ. R. 65.1 of the Local Civil Rules of the United States District Court for the District of New Jersey, to prohibit the defendants Marc Wasserman, David Kane, and Selective Financial Solutions (collectively, "Defendants") from continuing to unlawfully exploit and use Plaintiffs' trade secrets and confidential information.

## PRELIMINARY STATEMENT

This action presents a classic case of trade secret misappropriation by Defendants, for which the remedy of immediate injunctive relief is appropriate and warranted.

Plaintiffs seek immediate injunctive relief to address Defendants' systematic and deliberate diversion of Plaintiffs' clients to their own competing tax accounting practice while one of Defendants, Wasserman, was still engaged as an independent contractor for Plaintiff Dimov Wasserman. This misconduct, involving the diversion of numerous clients and a significant amount of lost revenue, coupled with Defendants' submission of fraudulent invoices for clients he had already diverted, constitutes a breach of contractual and fiduciary duties, among other common law and statutory violations, that threatens—and has already caused—immediate and ongoing irreparable harm.

The requested injunctive relief is necessary to prevent irreparable harm to Plaintiffs' client relationships, reputation, and business operations, and to ensure that any judgment

obtained is not rendered ineffectual through dissipation of assets. Plaintiffs satisfy all requirements for preliminary injunctive relief: strong likelihood of success on the merits, irreparable harm absent relief, a balance of equities favoring Plaintiffs, and public interest considerations supporting the requested relief, particularly in light of Defendants' professional roles: Defendant Wasserman is a Certified Public Accountant (CPA), Defendant Kane is a licensed attorney in the State of Pennsylvania, and Defendant Selective Financial Solutions provides tax preparation services.

Courts have consistently recognized that the type of client diversion and potential asset dissipation at issue here warrants immediate injunctive intervention. The relief sought is narrowly tailored to maintain the status quo by preventing further wrongful conduct while this litigation proceeds, without unduly burdening Defendants' ability to operate a legitimate business with properly acquired clients. Given the evidence of Defendants' systematic misconduct since he has worked at Plaintiff Dimov Wasserman, prompt judicial intervention is critical to prevent further harm.

## STATEMENT OF FACT

The facts relevant to this motion are fully stated in the accompanying Declarations of Jacqueline Heston (the "Heston Decl"), April Moore (the "Moore Decl") and George Dimov (the "Dimov Decl"),, filed simultaneously with this motion. We summarize the relevant facts here.

George Dimov is a CPA who is the founder and owner of Dimov Tax. Dimov Decl. at ¶2. The company was incorporated in Miami, Florida in September 2020. *Id*. at ¶2. Mr. Dimov is a business owner who operates other offices around the country which provide tax

5

and accounting services to clients. *Id*. at ¶3.

In September 2024, Defendant Kane contacted Mr. Dimov as an intermediary for Defendant Wasserman. *Id.* at ¶4-7. Kane asked Mr. Dimov if he would be interested in buying Defendant Wasserman's company: Marc Wasserman PC CPA. *Id*. at ¶5. Mr. Dimov eventually met with Defendant Wasserman to discuss the sale of the company. *Id*. at ¶21. To memorialize the terms agreed by both parties, a contract was drafted with the help of Mr. Kane. *Id*. at ¶6.

The agreement for the sale (the "Sale") of Marc Wasserman PC CPA to Dimov Tax (the "Purchase Agreement") was signed by Defendant Wasserman on October 28, 2024. *Id*. at ¶8. The purchase price of the transaction was $748,000 paid in the following manner:

    a.    an upfront payment of $150,000 upon closing;

    b.    monthly payments of $3,000 a month (which totaled $108,000 over three years);

    c.    yearly payments of $70,000 for five years as a consulting fee to Defendant Wasserman (totaling $350,000);

    d.    a $100,000 payment contingent on performance incentives over the 4th and 5th year after the Sale; and,

    e.    a $40,000 bonus on the fifth year of the contract assuming performance incentives were met. Exhibit 2 of Dimov Decl.

Dimov Wasserman strong data protection measures, including two-factor authentication, computer and software-level passwords, secured servers, and restricted internal access. *Id*. at ¶48. Only authorized employees may access client data. *Id*.

The Purchase Agreement indicated all assets of Marc Wasserman PC CPA,

including its list of clients, client contact information, client financial data and other trade secrets, were transferred to Plaintiff Dimov Tax. *Id.* Mr. Dimov incorporated a subsidiary of Plaintiff Dimov Tax, Plaintiff Dimov Wasserman, in New Jersey in October 2024 to integrate and continue operation of the assets of Marc Wasserman PC CPA. Dimov Decl. at ¶9. Mr. Dimov owns all the shares of Plaintiff Dimov Wasserman. *Id.* at ¶9.

To facilitate a smooth transition for the acquired business, Mr. Dimov offered Defendant Wasserman a consulting contract ("Consulting Contract") with Dimov Wasserman. *Id*. at The Consulting Contract was signed during the last week of October 2024. *Id*. at ¶11. As a result, Defendant Wasserman has been working onsite at Plaintiff Dimov Wasserman's New Jersey office. *Id*. at ¶12.

Defendants Kane and Wasserman were untruthful when negotiating the sale of Marc Wasserman PC CPA to Mr. Dimov. *Id*. at ¶25-26. An Electronic Filing Identification Number (the "EFIN") is needed for a tax professional to file electronic accounts with the Internal Revenue Service (the "IRS"). *Id*. at ¶24-25. For the Plaintiffs to professionally associate with a person who does not have an EFIN poses incredible regulatory risk. *Id.* ¶24-26. Despite this, Defendants Wasserman and Kane discussed the suspension of the EFIN months before the Purchase Agreement was signed, but did not tell Mr. Dimov about it. Dimov Decl. at ¶26 and Moore Decl. at ¶35-40. Had Mr. Dimov known he would not have executed the Consulting Agreement, nor would he have signed on the Purchase Agreement on the terms included in that contract. Dimov Decl. at. ¶28-29.

In November 2024, as part of the integration process after the Sale, Marc Wasserman PC CPA payment systems were being changed to that of Plaintiff Dimov Wasserman. Heston Decl. at ¶27-29. All revenue that went to Defendant Wasserman's bank account was

7

supposed to be immediately paid to Plaintiff Dimov Wasserman. *Id.* at ¶29. This was not done for weeks. *Id.* at ¶30. Eventually, Jacqueline Heston, an employee of Dimov Wasserman, became aware that Defendant Wasserman had spent these funds. *Id.* at ¶1 and ¶30. Defendant Wasserman, instead, told Plaintiff Dimov Wasserman to subtract the amount of these payments out of the monthly fee he was due by Plaintiffs. *Id*. at ¶31.

Since the date of the Sale, Defendant Wasserman intentionally diverted clients away from Plaintiff Dimov Wasserman. *Id*. at ¶32 After they inquired about having Defendant Wasserman prepare their tax returns, he would tell them not to pay for the service at Plaintiff Dimov Wasserman. *Id*. at ¶44. Instead, Defendant Wasserman prepared the returns and listed Defendant Selective Financial Solutions as the tax preparer firm. *Id*. This occurred with over 20 clients belonging to Plaintiff Dimov Wasserman. *Id*. at ¶35-62.

It was against Dimov Wasserman office policy to have individual employees accepting cash or Zelle payments to their own accounts. Moore Decl. at ¶55-58. Defendant Wasserman, however, would undertake work for clients that was not billed through Dimov Wasserman but, instead, was paid to him directly. *Id*.

Defendants Wasserman, SFS and Moore created a plan to steal away clients that rightfully belong to Dimov Wasserman. Dimov Decl. at ¶38. This was done by Mr. Wasserman preparing client returns which he prepared and listed SFS as the tax preparer firm. Heston Decl. at ¶24-36. As a result of the diversion of clients, Plaintiff Dimov Wasserman has experienced a 12.5% loss of its client base. Dimov Decl. at ¶36.

## ARGUMENT

### APPLICABLE LEGAL STANDARD

Courts consider four factors when deciding to grant preliminary injunctive relief

under FRCP 65: "(1) reasonable likelihood of success on the merits, (2) irreparable injury, (3) balance of the harms, and (4) the public interest (*citing K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013)).

The moving party need not satisfy every one of the four of these factors, but must demonstrate only an "overall need for an injunction." *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 Fed. Appx. 550, 554 (3d Cir. 2003). "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and an irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, F.3d 1421, 1427 n.8 (3d Cir. 1994).

## PLATINTIFFS LIKELY TO SUCCEED ON THE MERITS

To satisfy the requirement that the movant has a likelihood of success, it "must demonstrate that it can win on the merits." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Importantly, "'likelihood' [of success on the merits] does not mean more likely than not." *Id*. at 179 n.3 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). Rather, a movant is entitled to injunctive relief if it demonstrates a "reasonable probability that it will prevail on the merits." *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2009) (quoting *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975)). In evaluating whether a movant has satisfied this standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt." *Id*. Injunctive relief is warranted where a plaintiff establishes that they are likely to succeed on at least one of their claims. *Juan E.M. v. Decker*, 458 F.Supp.3d 244, 258 (D.N.J. 2020).

# PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

## Misappropriation of Trade Secrets

Under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, ("DTSA"), and the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 et seq., ("NJTSA"), a plaintiff must establish "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that it is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Labs, LLC v. Thanoo, 999 F.3d 892, 905 n.11* (3d Cir. 2021).

The DTSA and NJTSA "provide prospective injunctive relief for actual *or threatened* misappropriation of trade secrets." *Peoplestrategy, Inc. v. Lively Employer Servs., Inc.*, No. 3:20- cv-02640, 2020 WL 7869214, at *4 (D.N.J. Aug. 28, 2020) (emphasis added). "Trade secrets, under both New Jersey law and the DTSA, include proprietary business information like customer lists, pricing information, and marketing techniques." Id. at 11-12.

Regarding the first prong of the test in *Oakwood Labs*, the existence of a trade secret has been established because Plaintiff Dimov Wasserman dealt with hundreds of customers whose contact information was stored electronically on the company's computer systems. In addition, Plaintiff Dimov Wasserman also had an internal pricing list and marketing information. To protect its confidential and proprietary information, Plaintiff Dimov Wasserman undertook data protection measures, including two-factor authentication, computer and software-level passwords, secured servers and restricted internal access. Dimov Decl. at ¶48.

Second, the condition under the DTSA that the trade secret affect interstate commerce has been satisfied. The trade secrets were to benefit Plaintiff Dimov Wasserman in New Jersey but also affect interstate commerce because of the nature of the information and the fact it related to filing of federal tax returns for clients that could be based in or out of state. *Dormeis v. Super Tax LLC*, 2018 U.S. Dist. LEXIS 61450. Furthermore, Plaintiff Dimov Tax is a resident of Florida and, as such, was affected by misappropriation of trade secrets of Defendant Wasserman in New Jersey, which clearly establishes an interstate commerce nexus.

For the third prong, Defendant Wasserman misused his access to Plaintiff Dimov Wasserman's confidential informationDimov Wasserman. By virtue of his Consulting Contract, Defendant Wasserman was present at Plaintiff Dimov Wasserman's office in New Jersey and was given access to its computer system. He accessed and misused customer lists, pricing information, and marketing techniques against Plaintiffs by locating customers or receiving their calls, telling these customers that Plaintiff Dimov Wasserman's prices were too high, and then directing them to work instead with Selective Financial Solutions. Defendant Kane was an accomplice in this scheme and assisted Defendant Wasserman in preparing the tax returns.

The standards for trade secret misappropriation under the DTSA and NJTSA are "substantially similar" and are therefore considered together. *Oakwood Labs, LLC,* 999 F.3d at 905 n.11. Thus, Plaintiffs also satisfy the criteria to show that the acts of Defendants were in violation of the NJSTA.

**Misappropriation**

"A trade secret is misappropriated when it is: (1) acquired by a person who knows or has

reason to know the trade secret was acquired by improper means; or (2) disclosed or used without express or implied consent." *Peoplestrategy*, 2020 WL 7869214, at *4.

Misappropriation may be established by "improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood Labs*, 999 F.3d at 907-8. The term "use" has been "broadly defined as any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Id*. at 909.

Defendant Wasserman misappropriated trade secrets of Plaintiffs by disclosing customer information to Defendant Kane and Selective Financial Solutions for the purpose of diverting Plaintiffs' clients to Defendants, who are, effectively, competitors.

### Breach of Fiduciary Duty

To establish a breach of fiduciary duty, a plaintiff must plausibly allege "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Robinson v. Maintech Inc.*, 2024 U.S. Dist. LEXIS 229536, 2024 WL 5165325 (citing Read v. Profeta, 397 F. Supp. 3d 597, 633 (D.N.J. 2019). A fiduciary duty means that one person has placed "trust and confidence" in another person and relies on that person to exercise discretion and expertise on his behalf.

As a CPA, Defendant Wasserman has substantial trust and confidence placed in him by Plaintiffs. He breached this trust by intentionally diverting clients to Selective Financial Solutions with the help of Defendant Kane. The resulting damage is significant and based, in part, on the lost financial value of those clients who did not have their tax returns prepared by Plaintiffs.

### Tortious Interference

The elements of a claim for tortious interference with business relationships are (1) some reasonable expectation of economic advantage; (2) the defendants' actions were

malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage. *Waldman Seafood, Inc. v. Mical Seafood, Inc.*, 2014 U.S. Dist. LEXIS 86143, 2014 WL 2887855. Plaintiffs demonstrate that they had a reasonable expectation of economic advantage from their confidential client list. Defendants interfered with this right when Defendant Wasserman took advantage of his presence in Plaintiff Dimov Wasserman's office to divert clients from Plaintiffs to Selective Financial Solutions without justification or excuse. Plaintiffs lost certain revenue from clients as a result of these underhanded acts by Defendants.

Furthermore, Defendant Selective Financial Solutions and Defendant Kane interfered with the contractual and business relationship that Plaintiffs had with Defendant Wasserman. Plaintiffs bought Defendant Wasserman's tax and accounting practice, Marc Wasserman PC CPA, and executed a Consulting Contract that allowed him to work from Plaintiff Dimov Wasserman's New Jersey office. The fact that Defendants Selective Financial Solutions and Kane acted in concert with Defendant Wasserman to divert clients from Dimov Wasserman constituted tortious interference. *Peoplestrategy, Inc. v. Lively Emplr. Servs.*, 2020 U.S. Dist. LEXIS 171475, 2020 WL 7869214.

### Unjust Enrichment

"Under New Jersey law, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust and that the plaintiff expected renumeration and the failure to give renumeration unjustly enriched the defendant."

*Rodgers Group, LLC v. Lewis*, No. 22-482, 2022 WL 4095785 (D.N.J. Sept. 7, 2022). "When someone steals a trade secret and discloses it to a competitor he effectively assumes for himself an unrestricted license in the trade secret. And that bears its cost." *Oakwood Labs*, 999 F.3d at 913. Defendants utilized the trade secrets belonging to Plaintiff Dimov Wasserman to divert clients away and damage Plaintiffs' business. Due to the economic advantage they obtain, and resulting economic harm suffered by Plaintiffs, they were unjustly enriched.

## PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

"In general, to show irreparable harm, a plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Nat'l Reprographics, Inc. v. Strom,* 621 F. Supp. 2d 204, 2008 U.S. Dist. LEXIS 108729. Plaintiffs have met this criteria based on the fact that the diversion of clients committed by Defendants is ongoing and significant. A remarkable portion of Plaintiffs' business has been affected by the theft of trade secrets, client diversion, and anti-competitive conduct of Defendants. There is a real risk that Plaintiffs' business, particularly, Plaintiff Dimov Wasserman, would be permanently harmed if an injunction was not issued immediately. As a result of the actions of the Defendants, the Plaintiffs so far have experienced as 12.5% loss in their customer base, and this figure is sure to rise with the continuing theft of clients still ongoing by Mr. Wasserman.

The goodwill that the Plaintiffs have built up be negatively impacted if the Defendants are allowed to continue their behavior. Specifically, Mr. Wasserman has taken cash and Zelle's from clients without approval. He advised clients and prepared their tax returns without an EFIN. These

acts are unprofessional and likely to discourage the clients he has interacted with from ever returning to Dimov Wasserman.

Defendant Kane is a licensed attorney and should understand the gravity of a CPA operating with an EFIN. Nonetheless, Defendant Kane not only assisted Defendant Wasserman in processing returns but also helped complete the sale of Marc Wasserman PC CPA without informing the Plaintiffs of the suspended EFIN, which would attract significant regulatory risk. If Defendants acts are not enjoined, there is a real and substantial risk that Plaintiffs' business may be destroyed through the theft of trade secrets, diversion of clients, regulatory risk posed by Mr. Wasserman, and other acts committed by the Defendants.

## THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT INJUNCTIVE RELIEF

"Courts have routinely found that the equities favor the party seeking to prevent the misappropriation of trade secrets." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 2018 U.S. Dist. LEXIS 43612, 2018 WL 1374023. Courts have found that an employee misusing trade secrets and engaging in anti-competitive conduct should be enjoined from doing so. *Id*. Therefore, the misuse of confidential clients lists to divert client business as well as the related wrongdoing of Defendants warrants an injunctive remedy.

## CONCLUSION

For all of the reasons above, Plaintiff's motion for a temporary restraining order and preliminary injunction should be granted, together with such other and further relief as to the Court seems just, proper and equitable.

15

*Dated: May 23, 2025*

                            **ROMANO LAW PLLC**

By:   <u>/s/ Daniel Braverman</u>
      Daniel S. Braverman
      David Fish (*pro hac vice* pending)
      One Battery Park Plaza
      7th Floor
      New York, New York 10004
      Dan@RomanoLaw.com
      Davidf@RomanoLaw.com

*Attorneys for Plaintiffs*