# EXHIBIT 2

## **BUSINESS PURCHASE AGREEMENT**

This Business Purchase Agreement (the "Agreement") dated on this _____ day of October, 2024 (the "Effective Date") is made between <u>Mr. Marc Wasserman CPA and Marc Wasserman PC CPA</u> with an address of <u>105 Creek Crossing Blvd, Hainesport, NJ</u> and <u>Mr. George Dimov CPA and Dimov Tax and CPA Services</u>, with an address of <u>401 NW 31ST AVE, MIAMI FL 33125-4228</u>, for the particular purpose of setting forth the exclusive terms and conditions by which the Buyer desires to purchase the business from the Seller.

Background. The Seller is a <u>Marc Wasserman PC CPA</u> which carries on the business of full-service accounting at South Jersey, who's been representing businesses and individuals in the tri-state for nearly three decades and who's a licensed CPA. The Seller owns the assets of the Business and wishes to sell certain assets (the "Assets"), to the above-named Purchaser. The buyer is <u>Dimev Tax and CPA Services</u>, a full-service accounting firm serving businesses and individuals from New York to Maryland.

In consideration of the mutual obligations specified in this Agreement, the parties, intending to be legally bound hereby, agree to the following:

1. **TRANSFER OF ASSETS**

    **1.1  Purchase and Sale of Assets.** Based upon and subject to the representations, warranties, covenants, agreements, and other terms and conditions set forth in this Agreement, Seller shall sell, convey, transfer, assign, and deliver on the Closing Date and Buyer shall purchase, acquire, and accept, all of the assets, properties, rights, and goodwill of Seller of every kind and description, wherever located, used in or associated with the business of Seller except for the "Excluded Assets".

    **1.2  Purchased Assets.** The assets, properties, rights, and goodwill to be conveyed, transferred, assigned, and delivered by Seller on the Closing Date pursuant to Section 1.1 are sometimes herein called the "Purchased Assets" and shall include the assets described on Schedule

    The Purchased Assets are to be sold to Buyer free and clear of any and all liens, claims, charges, liabilities, obligations, and security interests of every kind and nature. Without limiting the foregoing, the Purchased Assets shall include the following:

    (a)  **Client Files.** Seller's entire current and historical inventory of client files, including, without limitation, client names, addresses, tax returns, financial statements and other client file inventory utilized in the operation of the Business (the "Clients").

    (b)  **Equipment.** All of Seller's equipment (the "Equipment"), such as computer hardware, software and file contents, printers and any other equipment utilized in the operation of the Business including, without limitation.

    (c)  **Claims and Rights to the Purchased Assets.** All of Seller's claims and rights (and benefits arising therefrom) related to the Purchased Assets against all persons and entities, including, without limitation, all rights against suppliers under warranties covering any of the Equipment and Inventory, other than claims and rights to any tax refunds and insurance refunds from any Excluded Assets.

    (d)  **Phone Numbers and Website Addresses.** All telephone and facsimile numbers and all e-mail addresses and web site addresses used by Seller.

**1.3   Excluded Assets.** The following assets of Seller shall be excluded from the purchase and sale contemplated by this Agreement (the "Excluded Assets"):

   (a)   Cash

   (b)   Accounts Receivable

   (c)   The value of any work in process as of the Closing Date

   (d)   All claims or causes of action accruing prior to Closing

   (e)   Personal effects of Seller not used in the Business

## 2.   ASSUMPTION OF LIABILITIES

**2.1   Assumed Liabilities.** Without limitation of the foregoing, Buyer shall assume Seller's lease for the Business premises, the software licenses, and all equipment leases. Buyer shall also offer employment to all employees of Seller as of the Closing Date. In addition, Buyer shall assume the liabilities for storage of all client files associated with the Business.

3. **HIRING.** Hiring decisions shall be made collaboratively with Marc Wasserman's input taken into consideration.

4. **MARKETING.** Marketing shall include all of buyer's planned marketing and shall include Wasserman's prior marketing at buyers' discretion.

5. **WAIVER.** Buyer waives any conflict in Marc's ability to consult through EXE expert witness company, teach scholastically or continuing education, or support and assist family and friends.

6. **PURCHASE PRICE.** The Parties agree to a total agreement price of $748,000.00. This includes a guaranteed $258,000 with an initial payment of $150,000.00 and monthly payments totaling $258,000 and further includes a 5-year contractor payment of $70,000 per year totaling $350,000, a contingent performance bonus payment of $100,000, and a bonus payment of $40,000.

7. **CLOSING.** The closing (the "Closing") of the transactions contemplated by this Agreement shall take place at the offices of Marc Wasserman PC CPA, 105 Creek Crossing Blvd Hainesport, NJ 08036. or such other place as the parties may agree on or before the 25th day of October at noon, which date is sometimes herein called the "Closing Date."

   **7.1 Deliveries by Seller.** At the Closing, Seller shall deliver:

   (a)   **Instruments of Conveyance.** Such deeds, bills of sale, instruments of assignment, and other instruments and documents as may be necessary to convey to Buyer title to the Purchased Assets, including without limitation, a bill of sale and assignment agreement (the "Bill of Sale and Assignment Agreement").

(b) All assignments, consents, certificates, and other documents delivered by Seller shall be in form reasonably satisfactory to counsel for Buyer.

**7.2 Deliveries by Buyer.** At the Closing, Buyer shall deliver:

(c) Purchase Price. Payment of the purchase price shall be made by wire transfer, certified check, or other check acceptable to Seller.

**8. Terms & Conditions:** This agreement outlines the financial and professional terms for the acquisition and consulting all services. All payments and services are contingent on both parties adhering to the terms specified. Modifications to the agreement can be made by mutual consent, and both parties agree to work in good faith throughout the duration of the contract.

### 8.1. Initial Payment

The Buyer agrees to make an initial **upfront payment of $150,000** upon the closing of the acquisition. Payments should be made by wire.

### 8.2. Monthly Payments

In addition to the upfront payment, the Buyer agrees to pay the Seller **$3,000 per month for the first 3 years**, totaling **$108,000** over that period. Payments shall be made by wire or ACH.

### 8.3. 1099 Contractor Payment

The Seller will continue to provide consulting and advisory services to the Buyer as a 1099 contractor. The Buyer agrees to pay the Seller an annual contractor fee of $70,000 per year, to be paid at $5,833.33 per month, for the duration of the agreement. A separate contractor agreement shall be made between the parties in accordance with the parameters in this agreement of sale.

- Contractor Payment over 5 years: $70,000 annually totaling $350,000 over 5 years
  The scope of services will be mutually agreed upon between both parties.

### 8.4. Contingent Payment

The Buyer agrees to a contingent payment of **$100,000**, based on maintaining performance and revenue stability. This contingent payment will be distributed **monthly over Years 4-5**, once performance benchmarks are met. The monthly payment will be approximately **$4,166.66 per month.**

### 8.5. Bonus Payment

At the end of Year 5, the Seller will be eligible for an additional $40,000 bonus (or prorated) if the business maintains an average annual revenue of $750,000 and a 30% margin over the five-year period.

### 8.6. Summary of Compensation

Your total compensation over the next 5 years will include:

- **Upfront Payment**: $150,000 upon closing.
- **Monthly Payments**: $108,000 over 3 years.
- **Contractor Payment**: $70,000 annually, totaling $350,00 over 5 years.
- **Contingent Payment**: $100,000 paid over Years 4-5.
- **Bonus Payment**: $40,000 at the end of Year 5, contingent on performance.

### 8.7. Compensation Breakdown

- **Years 1-3:**
    - Upfront payment: $150,000.
    - Monthly payments: $3,000/month, totaling $108,000.
    - Contractor payment $70,000 annually
    - Total annual income for Years 1-3: $106,000 per year
- **Years 4-5:**
    - Contractor payment $70,000 annually
    - Contingent payment $100,000 spread over Years 4-5
    - Total annual income for Years 4-5: $120,000 per year
    - (with potential for a $40,000 bonus)

### 8.8 Additional Buyer's Terms and Conditions

4

Marc Wasserman will continue to offer guidance and participate in the business's growth by providing advisory and consultancy services. His responsibilities will be determined based on the needs of the business and as agreed upon with George Dimov, CPA.

Wasserman's role may include full time, part time or per diem work as required and as agreed upon during the course of the arrangement and shall include the following:

- Client work must be reviewed & presented to the clients by Marc for clients that are dependent on the relationship: Dimov can provide back-end support for preparation, however, since Wasserman manages the relationships, we would need support for review with clients that see Marc as the go to person
- Dimov will handle back and sales assistance, data entry (where practical), virtual assistance, marketing assistance, IT assistance (where practical), systems implementation, etc., however, we will need Marc to be the face of the company for meeting with perspective clients. This should not be more than several meeting per week once we have the ads running. We will run local ads, which will attract some in person clients, this is something that Dimev currently is missing and would be an excellent addition to have Wasserman's expertise available when meeting with new prospective clients.
- I anticipate a normal workload not to exceed 40 hours per week during the slow times and the standard busier workload as expected for a tax firm during the peak seasons.
We can handle any easier bookkeeping or other administrative work to free up Wasserman's schedule as much as possible to focus on higher value tasks, such as tax planning, relationship building, final review of returns with the client (in person or on the phone), and meeting with perspective clients.

### 8.9. Business Performance Contingencies

- The contingent payments and bonus are subject to the business maintaining a minimum revenue of **$750,000 per year** and a **30% profit margin**.
- If these performance benchmarks are not met, the contingent payment and bonus will be adjusted accordingly.

**9. Purchaser's Representations and Warranties. The Purchaser represents and warrants to the Seller that:**

9.1. The Purchaser has full legal authority to enter and exercise its obligations under this Business

9.2. Purchaser representations and Warranties of Buyer. Buyer represents and warrants to Seller that Buyer is a New Jersey professional corporation in good standing with the legal capacity and the authority to own the Business and carry out his obligations hereunder. This Agreement has been duly executed and delivered by Buyer and constitutes the legal, valid and

binding obligation of Buyer enforceable against Buyer in accordance with its terms. Buyer represents that he is not a party to any agreement that prevents Buyer from performing his obligations under this Agreement.

9.3. The Purchaser has the funds readily available to pay the full Purchase Price and any expenses incurred by the Purchaser in relation to this Agreement and the Purchaser does not have any commitment, obligation, restriction, or liability of any sort, contingent or absolute, present or future, which would adversely affect its ability to adequately perform its obligations under this Business Purchase Agreement.

9.4. The Purchaser has not committed any act or any omission that should give rise to any valid claim relating to a finder's fee, brokerage commission, or other similar payment.

9.5. The Purchaser is a citizen of the United States.

9.6. The Purchaser has no knowledge that any representation or warranty provided by the Seller is false or inaccurate.

9.7. No Conflict. The execution, delivery and performance of this Agreement by Buyer of the transactions contemplated hereby will not conflict with or result in the violation of the provisions of the Certificate of Formation or the operating or partnership agreements of the Buyer.

9.8. Not Misleading. No presentation or warranty of Buyer contained in this Agreement or in any agreement, document or instrument to be delivered by Buyer pursuant hereto, contains or shall any untrue statements of material fact or is made by Buyer knowing the same omits or will omit a material fact necessary to make any such representation or warranty not misleading.

9.9. The Purchaser warrants that each representation and warranties made by it are accurate and not misleading at the date of Closing. The Purchaser's representations and warranties shall survive the Closing Date of this Business Purchase Agreement.

**10. Notice.** All notices or requests required or contemplated by this Agreement shall be in writing and such notice shall be delivered as follows:
if from the Seller to the Purchaser, shall be hand-delivered or mailed to:

George Dimov CPA

401 NW 31ST AVE,

MIAMI FL 33125-4228

George@dimovtax.com

or such other address as the Seller shall specify in written notice to the Purchaser.

if from the Purchaser to the Seller shall be hand-delivered or mailed to:

    Ronald M. Warren

    Warren Law, LLC

    651 Route 73 North, Suite 403

    Marlton, NJ 08053

    ron@warrenlawnj.com

or such other address as the Purchaser shall specify in written notice to the Seller.

**11. DISPUTE RESOLUTION.** Parties to this Agreement shall first attempt to settle any dispute through good-faith negotiation. If the dispute cannot be settled between the parties via negotiation, either party may initiate mediation or binding arbitration in the State of NJ. If either party does not wish to mediate or arbitrate the dispute and litigation is necessary, this Agreement will be interpreted based on the laws of the State of NJ, without regard to the conflict of law provisions of such state. The Parties agree the dispute will be resolved in a court of competent jurisdiction in the State of NJ.

**12. GOVERNING LAW.** This Agreement shall be governed in all respects by the laws of the State of New Jersey without regard to the conflict of law provisions of such state. This Agreement shall be binding upon the successors and assigns of the respective parties.

**13. NO ASSIGNMENT.** This Agreement shall inure to and be binding upon the undersigned and their respective heirs, representatives, successors and permitted assigns. This Agreement may not be assigned by either party without the prior written consent of the other party.

**14. COUNTERPARTS.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**15. ELECTRONIC SIGNATURES.** This Agreement and related documents entered into in connection with this Agreement are signed when a party's signature is delivered electronically, and these signatures must be treated in all respects as having the same force and effect as original signatures.

**16. SEVERABILITY.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or

provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**17. CAPTIONS FOR CONVENIENCE.** All captions herein are for convenience or reference only and do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof.

**18. NO WAIVER.** No waiver of or failure to act upon any of the provisions of this Agreement or any right or remedy arising under this Agreement shall be deemed or shall constitute a waiver of any other provisions, rights or remedies (whether similar or dissimilar).

**19. AMENDMENT.** This Agreement may be amended only by a writing signed by all the Parties hereto.

**20. ENTIRE AGREEMENT.** This Agreement constitutes the sole and entire agreement of the Parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter. This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto.

**21. CLOSING REMARKS:**

This structure ensures that Marc Wasserman is compensated not only through the upfront and monthly payments but also through his continued involvement in the business as a 1099 contractor. The arrangement allows for Marc to share in the ongoing success of the business while securing substantial earnings during the transition period.

*[Signatures on Following Page]*

8

IN WITNESS WHEREOF, the undersigned have executed this Business Purchase Agreement effective as of the _____ day of October 25, 2024 (the "**Effective Date**").

Dated: 10/25/24

*Marc Wasserman* (signature)

Seller's Signature
Marc Wasserman CPA
Seller's Printed Name or Entity

Dated: _____

_____
Purchaser's Signature
George Dimov CPA
Purchaser's Printed Name or Entity

**Seller's Contact Information:**
Address: 105 Creek Crossing Blvd, Hainesport, NJ 08036

Phone Number: 601-781-3929

Email Address: marcw@wasserman-cpa.net

**Purchaser's Contact Information:**
Address: 401 NW 31st Ave Miami, FL 33125

Phone Number: 212-641-0673

Email Address: George@dimovtax.com

9

# EXHIBIT A

Assets

**The Purchaser wishes to purchase the following Assets from the Seller:**
1. **Client List** (names, contact details, history) _____
2. **Email Lists** (marketing or contact databases) _____
3. **Client Files/Information** (digital and physical records) _____
4. **Hardware** (computers, servers, office equipment) _____
5. **Website Name/Domain** (and related content) _____
6. **Digital Assets** (software licenses, cloud storage) _____
7. **Server/Cloud Assets** (client data hosted on cloud or in-house servers) _____
8. **Online Portals** (client access platforms) _____
9. **Contracts/Engagement Agreements** _____
10. **Branding Materials** (logos, trademarks) _____

The buyer will get all assets except Dell Desk Top Microprocessors WKRA019, WKRS010, and WKRS020. _____

_____

_____

_____